We have the matter this morning of 19-3561 Sherwin Williams Company v. County of Delaware et al. Mr. DeGiulis has sent off. Mr. DeGiulis, whenever you're ready. Thank you, Your Honor. Good morning, and may it please the Court, Lee DeGiulis, Jones Day, on behalf of the appellant, the Sherwin Williams Company, I reserve four minutes for rebuttal. No problem at all. Sherwin Williams brought a federal court action, territory, and injunctive relief to protect its federal constitutional rights. Yeah, we're pretty familiar with the facts here. It seems to me as if when I look at this and kind of smile, it's like you're thinking maybe the best defense is a good offense because of things that have happened in other counties, although I guess most of them have been remanded back to state court. What was the thinking here as to why you wanted to bring this particular action? Sure, Your Honor. I do think a good offense is a good defense, and there's nothing wrong with that. Since 1908 in Ex Parte Young, the Supreme Court has recognized that when a plaintiff has experienced a violation of constitutional rights or is eminently going to experience a violation of rights, it may affirmatively bring a lawsuit, and there's been an unbroken chain of precedent since then. Mr. DeGiulis, let me ask you a question with respect to your due process argument tethered to your theory that the county has ceded control of lawsuit to the law firm. How do you reconcile that argument with the language on page two of the engagement letter at paragraph three, where it makes it clear that the county controls the lawsuit? Your pleadings and your arguments have argued to the contrary. Yeah, well, a couple things, Your Honor. First, there has been no discovery. What we're talking about here is... I'm talking about JA-226. It's part of the record. Square the third paragraph with your argument. What we have alleged is that the use of contingent fee counsel, where there is a financial interest in the recovery in a public nuisance action, that in and of itself violates the United States Constitution. The Berger case... Your complaint reads, because the fee agreement does not require the county solicitor to retain control of supervision over significant decisions in the litigation. That's not what the retention agreement says. Yes, Your Honor. We didn't have the retention agreement when we filed suit. Well, you had it when you filed your... You do now. We do now, because we served a public records request. This on 226, JA-225 to 226, is a contingent fee agreement that was revised after we filed lawsuit. So square your argument with the revised agreement. So the argument that we are making is that the retention of counsel itself is a violation of due process. So the mere retention of counsel... The mere retention of counsel is a violation of due process. And a contingent fee counsel, because a public nuisance action, the obligation is to do justice. So if they were billing by the hour, much like law firms do, you wouldn't have a due process problem? It's only because it's a contingency agreement? Correct, Your Honor. Correct, Your Honor. There's a financial interest not to do justice. There's a financial interest in billing a case, too. Sure there is. But in the case, in public nuisance, there's a prosecutor. You can't have... And the Supreme Court is clear. There's federal regulations that are clear. You can't hire a prosecutor on a contingent fee. You only get paid if somebody goes to jail. That is a basic constitutional premise. And what we're contending, and courts have recognized, that public nuisance is quasi-criminal. It is brought in the public interest. And we are saying you cannot have a contingency counsel whose obligation is not to do justice, but is to recover the highest amount. And that, in and of itself, we say violates due process. If they want to pay by the hour, they can do so. Because the recovery financial interest is not irreconcilable with due process. And that is the basic premise of our argument. I'm still having trouble with how you square that argument with the fee agreement in this particular case. As I said, this fee agreement that we received after we filed a lawsuit, it didn't exist at the time we filed a lawsuit. It existed when you presented your brief to this court. You are correct, Your Honor. We included it in the appendix. The point that we are making, we're here on standing and ripeness. And so the question is whether we have alleged a violation, an injury, sufficient to proceed to the merits of the case. And what the court is asking about is the merits of the case. Whether or not we can... Your argument is that your due process rights are being violated, sir, as I understand it, as a result of this contingency fee agreement. Correct, Your Honor. Correct, Your Honor. But what we're here today about is standing. Have we alleged an injury? Have we alleged a violation of a constitutional right? And the court... Standing would be a stake in the game. Ripeness means is it ready for decision now as opposed to later because perhaps something is hypothetical. Isn't ripeness more the issue here? I think the Supreme Court has said that when they're standing, there's ripeness in most cases. The district court here didn't analyze ripeness. Wayne Land sets forth a three-pronged test to decipher ripeness. The court didn't apply that. The court said all of the injuries here are contingent. They are dependent upon some future action. And the court didn't recognize that we have alleged a current injury, that the entry of the agreement is the injury allowed that we've alleged. That's a violation of due process. And it's a violation that the city of Columbus actually entered an injunction on. In Wayne Land, let me ask you, if you're relying on that as opposed to Wyatt, but it seemed to me that Wyatt might be more applicable. Let's go to Wayne Land. There, the company sought a declaratory judgment and it wanted to engage in an activity fracking that it couldn't engage in without either risking penalties or engaging in a costly application process. Here, all of the activity at issue, past sale and advertisement of lead paint occurred in the Wayback Machine. So how is a declaratory judgment action necessary here as it was in Wayne Land? Well, Your Honor, I think there's a couple things. First off, there's fundamental rights at stake. We've alleged an existing violation of our due process rights by the entry of the contingent fee. We've also alleged that our First Amendment rights are being killed by the exercise of this lawsuit. Let's digress on that. Are you making a, what kind of challenge? Facial challenge? Or a factual challenge? It's a factual challenge. It's a contention that a public nuisance lawsuit based on the marketing and association and petitioning rights violates First Amendment and that that is currently chilling our First Amendment speech rights. So we're talking about fundamental rights. But the speech here, which was advertisement of lead-based paint, is not going to recur, is it? That speech will not reoccur. Because we haven't been sure when Williams long ago stopped making residential lead-based paints. No, it's 40 years ago was the last conduct at all that could be at all relevant here. But the point being, Your Honor, and the court recognizes this in Ray Asbestos, Justice Alito's decision, that allowing suits to go forward based on speech, based on association, based on petitioning, puts a chill on First Amendment violation. No, but the speech here was 40 plus years ago. I think that's where Judge Ambrose had it. How is that a current First Amendment violation? Because it is chilling our current exercise of rights. The fact that you say something yesterday and you're sued, that's what happened in Ray Asbestos. They weren't saying what you're going to say tomorrow is going to violate the First Amendment. They said what you're being sued about, what you had already said, you can't bring suit on because it will eventually, it chills your future exercise of your rights. And the fact that it was years versus decades in Ray Asbestos is irrelevant. It's the current lawsuit chills current speech rights. What would your client like to say next week that it's afraid to say because of the contingency agreement? I don't have an answer to that, Your Honor. What I can say is we've alleged in the complaint, and remember, for standing and ripeness purposes, what we're talking about, general factual allegations suffice. And what we say in the complaint is that Sherwin-Williams has reevaluated and is continuing to reevaluate its association with organizations and its marketing based on the filing of these lawsuits. And for purposes of standing and ripeness, not merits, we're not to the merits yet. For those purposes, that is sufficient. Isn't that asking us to set a dangerous precedent in this way? Because if I understood what you just said, Mr. DeGiulio, you're saying that an organization's self-monitoring or modification of its behavior is enough to create a First Amendment harm. If it decides it's afraid to speak, now you've got constitutional injury sufficient to confer standing. For purposes of standing, Your Honor, I believe that is correct. What we're talking about here and there has to be some... But that seems to turn our adversary system on its head because injury is about your adversary harming you, not you harming yourself by making a decision not to speak. But Your Honor, what we're talking about is, I mean, first of all, the First Amendment recognizes that self-censorship is a danger. That's why ripeness is relaxed. That's why standing is relaxed in the First Amendment context, because self-spent censorship is to be discouraged. And so when there is a law that prevents passing out of handbills, the fact that it may not be enforced... You can bring the pre-enforcement challenge so that you don't self-censor. And the question is whether there's an objective... A lot of those cases date back to the Red Scare case. A lot of those were criminal prosecutions based upon speech that the government had disfavored through federal law, right? Certainly some of them are, but not all of them. And when you look at in-write asbestos, which is, I think, almost directly on point, because it talks about the chilling effect of associating and speaking based on allowing a lawsuit to proceed. That was the injury that was not only sufficient for standing or the merits, but for mandamus to be issued. All right. Let me just ask one more question, which is... Go right ahead. If next week, opposing counsel sends a letter to Delaware County that says, it has been a pleasure to have been engaged by the county. We have researched potential causes of action consistent with our engagement letter and consistent with our ethical duty as officers of the court. We see no viable claim here. Accordingly, we're terminating our engagement. What injury does Sean Williams suffer when that happens? In that case, Your Honor, that would have been a repudiation of the lawsuit, which the Peachum case recognizes as relevant to standing and ripeness. And the injury would be non-monetary. Sean Williams isn't seeking to hold Delaware County liable and pay dollars for the fact that it has hired counsel. What we're saying is that it violates our constitutional rights and it has to stop. Yeah, but what's... I'm asking what... So it's stopped. Under the hypothetical I just gave you, what is your client's injury? It will have ended. It will have stopped. They have withdrawn. There is no further imminent threat of a lawsuit. And that is what we are seeking to enjoin. All right. So your answer is that your injury, your current injury, is the imminent threat of the lawsuit, even if that lawsuit never comes,  right? Well, sure, Your Honor. But you look at the objective facts where you are. Pre-enforcement lawsuits have been recognized time and time again. You don't have to wait for the other side to file the lawsuit. The question... That's not the question. The question is, what if they decide they haven't sued and if they decide not to sue? It sounds like, back to the beginning, your defense has gone offense and have them recede. Sure, Your Honor. If they don't sue, we have been redressed. But the point being is the courts have recognized that pre-enforcement lawsuits are common. You don't have to wait for the other side to file. And the question is whether there's objective criteria that indicate a lawsuit will be filed. And here there has been a unanimous retention of counsel by a county counsel. There has been an engagement letter, retention, that specifically mentioned Shoren-Williams, a public nuisance action based on marketing. Only thing left is to actually file the lawsuit, file the paper with the court. And the Supreme Court has recognized time and time again. The MedImmune case, for example, recognizes that when someone threatens to sue you, you can sue first. That's where we are. And if they don't sue, if they repudiate, if Mr. Sunoff says, we're not going to sue, it's over. I understand that. That's what the Peachum case recognizes. Repudiation is relevant, but they haven't repudiated and they have fought. That's why we're here today. Let me go back to, we cut off, we talked about Waineland, which to me didn't seem as applicable as Wyatt. Wyatt seems to be a more similar case. Now, your brief attempts to distinguish the case as being one where the government hadn't taken concrete steps toward enforcement, but it had sent a cease and desist letter and it had threatened legal action. So we said there, that wasn't enough to create a ripe controversy and that the plaintiff there merely sought a declaration to hold in readiness in to act. How is that any different from this case? Absolutely, your honor, because in Wyatt, the court recognized that the commission would have to, they'd have to seek further remedial action before they could ever file a lawsuit. So there was, there was another step that had to happen before a suit could be filed. There is no such step here. They have retained counsel and the only thing left is to actually file the paperwork. This is no different than MedImmune versus Genentech, where the Supreme Court said there was a, you know, there was a letter that threatened to file a lawsuit and the Supreme Court said it was perfectly acceptable for the other party to file a declaratory judgment action. Let me ask a dumb question. Why aren't the county's rights, if we were to rule your favor, right to sue being chilled? They have the right to sue. We are, we are, they cannot sue in violation of their federal constitutional rights. I understand. Let's say, let's say they, they engage ABC firm. ABC firm decides to take it on an hourly basis, subject to a cap. You have a problem with that? No. So the only issue you have is that the firm that Delaware County has, has chosen to represent it so far has a contingency. Is that right? Correct, your honor. It is a financial incentive not to do justice, but to maximize the recovery. And when you're talking about public nuisance action, quasi-criminal, that makes a significant difference. If Shore and Williams were, were to, you know, the potential remedy might be an enforcement action against landlords who have control of the properties on which kids are being lead poisoned, not the product that was sold in some instances more than a hundred years ago. And it's, it's that financial interest to maximize the recovery and not to do justice that we contend violates due process clause. What cases say that? Well, I can say that the California Supreme Court and the Rhode Island Supreme Court both recognized the constitutional concerns related to contingent fee council and a public nuisance action. We don't believe that there's not a federal case anywhere in the country yet that holds what you're asking us to hold. You want us to be the first federal court in the country to hold that the contingency arrangement states a claim for constitutional violation. Yes, your honor. I will say that the city of Columbus court did recognize the constitutional violation and due process the way the contingency agreements were then drafted. But didn't that same court revise its position? Didn't that same court revise its position when the contingency agreement was modified much like the one we're dealing with now? Correct, your honor. It initially issued an injunction and then mod and it forced the counties to modify the agreements and then, and contended it was okay. So it didn't, in our view, go to protect our rights. It didn't go far. So that court said these were okay. But for purposes of standing, we're not here on the merits. We're here for standing, your honor. And the court, the federal court in Columbus and the courts in Rhode Island and California would have recognized an injury for purposes of standing. That's the issue, not whether or not we will ultimately prevail, whether there needs to be discovery, whether there needs to be some sort of summary judgment motion. All of those things are for a later date. The question is whether we've alleged an injury. And city of Columbus recognized not only an injury, but issued an injunction. An injury that's ripe for decision now. That's absolutely. The court, in Columbus, it was in exactly the same situation. Counties had engaged contingent fee counsel. They had not yet sued. And the court issued an injunction. So not only found standing, but issued an injunction to protect the rights. And what we're asking for is the opportunity to proceed with the lawsuit that we have standing to proceed to get to the merits. Let me go back to your mention about in-ray asbestos. As I recall, that case is not about standing or ripeness at all. It's about a class action based on use of asbestos in schools. Isn't that right? Or am I wrong? Based upon, in part, the conspiracy claim was based on associating with trade associations. And then Judge Alito. Is there any discussion at all about when the chilling effect is sufficiently concrete to make the claim right? It doesn't talk in that context because it isn't a standing or ripeness case. What it does talk about, though, is the injury. And the need for mandamus action was because the injury of going to court, of proceeding with the lawsuit based on association rights, based on speech, would impermissibly chill FISER's rights, First Amendment rights. And that's what the court held authorized the mandamus action because it was a clear violation of speech. That injury is the same here as it is there. The fact that it's a different procedural posture doesn't change the injury that we're alleging. So I really come back to Judge Hardiman's question. It seems like you're asking us to the first court in the country to hold that somehow the engaging of counsel on a contingent fee basis is a violation of your constitutional rights. And my fear is if we were to do that, I could just see us getting GBR to the Supreme Court. Well, Your Honor, right now we're not we're not asking you to make that determination on the merits at all. What we're asking is that we've alleged an injury and this court would not be the first to find that injury. We have both Holmes County, which the Fifth Circuit, Sherwin-Williams filed a lawsuit against school districts that were looking at filing lawsuit, and the Fifth Circuit reversed and remanded because we had alleged an actual controversy. So this court, if it decides otherwise, would actually create a circuit split on the judiciability of these types of claims. We're not asking for a merits determination. The court at a later date can determine that, no, it's not ready to assert that this violates due process. And we can't prevail. But that doesn't mean we don't get an opportunity to present our case. And that's what this case is about, is whether we get that we should get that opportunity. That's Holmes County, that's City of Columbus. Those are courts directly on point here. All right, let's hear from Mr. Senoff, and then we'll get you back on rebuttal. Thank you, Your Honor. Good morning, and may it please the Court, David Senoff on behalf of Appellees, the County of Delaware, and three former and two current members of the County Council. The former members are John McBlain, Colleen Marone, Michael Culp, and the current members are Kevin Madden and Brian Zydig. We believe, obviously, that the Court's October 4th, 2019 order dismissing the action for lack of subject matter jurisdiction was proper, and that Sherwin-Williams cannot maintain its Article III requirements to show justiciability and separately that even if they were able to do that, there is no subject matter jurisdiction in the District Court, as the District Court properly found. And we also believe that even if the Court were to find that it had jurisdiction sufficient to entertain a declaratory judgment action, that the District Court would be well within its rights under this Court's reefer and summy decisions to simply exercise its discretion not to take such a declaratory judgment act case, because all of the allegations that Sherwin-Williams has alleged in this complaint find their basis in county complaints that have already been remanded to the State Court, this Court having affirmed the District Court's prior decision that there was no jurisdiction in the Federal Court for those cases as previously pled. So while on the one hand they have alleged that the underlying complaint will mirror those counties' complaints, on the other hand, the District Court and this Court entered orders and this Court affirmed that there was no removal jurisdiction for those cases. So what we have essentially is a state law controversy over public nuisance, which the District Court and this Court, that underlying case have said is improper before the Federal Courts, and that this case now has come along, the current case, when Delaware County has not yet filed a lawsuit and when Delaware County has not threatened a lawsuit by letter, by anything other than the mere retention of counsel, and along comes defendant, I'm sorry, plaintiff Sherwin-Williams, to say that their current injury for Article III purposes is a prior fee agreement. In fact, it is inaccurate for counsel to infer or suggest that the prior fee agreement, the one that predates the October 2018 fee agreement found at JA 225, was attached to their complaint. In fact, it was not. There was no fee agreement between Delaware County and the law firm at the time attached. So based on the face of the complaint, it would be hard to establish, difficult for them to establish that that fee agreement forms the basis. And the reason why that fact is significant is that in the City of Columbus case, yes, in fact, the District Court did entertain a challenge based on a fee agreement, but the District Court permitted the fee agreement to be revised under the District Court supervision. Once the fee agreement was revised, the District Court said it was not going to enter any kind of injunction. And so the issue here is, recall that in the City of Columbus, numerous cities had filed a claim against Sherwin-Williams and in one complaint, and there were some cities that had alleged, that had already filed, but the City of Columbus had not already filed. And so with regard to the City of Columbus, the District Court initially ruled that the case wasn't going to go forward. But then when the City of Columbus filed this lawsuit, the District Court entertained a challenge to the fee agreement. Nevertheless, counsel has said here that the current injury is the prior fee agreement or the fee agreement executed, but not the fee agreement that is the current fee agreement. And so on the one hand, while Sherwin-Williams doesn't want to talk about the merits, except they want to talk about the merits when it's helpful to them, we believe that the current lawsuit, if the basis is the fee agreement, then sending it back down for a determination about whether JA 225 does or does not meet the appropriate standard, which seems to me to be futile, simply because that's exactly the relief that the District Court provided in the City of Columbus. So while on the one hand, we believe that the District Court was correct in its determination that there is not a concrete particularized injury, and that similarly, this matter is not right, we also believe that there isn't any legal basis for subject matter jurisdiction, but we did just... We believe that is well set forth in our brief, but we did want to point out to the court that we, for the reasons that this court has questioned Sherwin-Williams about, do not believe that this is a case that focuses on a proper pre-enforcement challenge. If the basis is the chilling of their First Amendment rights based upon a due process claim by mere signing of a fee agreement, then I believe that we believe that this is a hard line to draw because on the one hand, counsel has said, if it was an hourly fee agreement, it would be fine. Well, suppose it were partially hourly and partially contingent. It's hard to find in the absence of a lawsuit, the mere execution of a fee agreement to be a concrete and particularized injury sufficient to satisfy Article III's requirements. But they are making a due process claim regarding the contingency fee agreement, and the facts appear to be pretty straightforward. So wouldn't that claim be predominantly legal for purposes of the conclusiveness of the judgment? Well, I do agree that that claim would be predominantly legal. However, for purposes of the claim, there was no fee agreement attached to the complaint that was on the one hand, we should not look at the current agreement because that's looking at the merits. On the other hand, there was no agreement attached. And to the extent that that agreement was superseded, the fact that this mere signing of another agreement would form the basis sufficient to establish Article III standing and Article III justiciability in the current case as pled, would seem to also set a difficult precedent to manage. In other words, Counsel, could you address Mr. DeGiulis' arguments related to the home city decision from the Fifth Circuit? Certainly, Your Honor. In that case, the Fifth Circuit, and this was actually pointed out in the City of Columbus case, that in that case, the District Court declined to because of a possible preemption claim in that case. Here, there is no claim of federal preemption, just like there was no claim in City of Columbus that there was any federal preemption. And as a result, the District Court in the City of Columbus found that the Holmes County case was City of Columbus versus City of Columbus, and that there was no federal preemption, and that as a result, the complaint was based solely on affirmative defenses, which we have said here, in which the District Court has found, to a state court complaint. In our case, it's even one step removed. We have said that the allegations are essentially affirmative defenses to a state court complaint that has yet to be filed. And the reason why we know this is because we've seen in their various filings in other cases, almost identical pleadings, except in the form of affirmative defenses. And so here, what's going on is they've alleged affirmative defenses as the basis for their cause of action. And as the District Court found, it was even one more step removed from some of the cities in Ohio that have filed because the complaint is yet to be filed in this case. And the idea that the county could simply stand up and repudiate the idea that it was going to file a lawsuit, it seems to me is really no good remedy, because the idea that they would repudiate seems to me to be something more akin to, you know, extorting a response that they want from the county to be dismissed, to dismiss it from an as yet unfiled lawsuit, and agree to simply release any claims it may potentially have against Sherwin-Williams, simply because Sherwin-Williams filed the lawsuit. And the underlying sort of current of all of this is the idea that if hourly counsel are appropriate because they're financially disinterested, and contingency counsel is inappropriate, that strikes me for any number of reasons to be a difficult road to go down, simply because on the face of it, what they're saying is, if the county spends money on counsel, then they can file a lawsuit. But if the county is in financial hardship, or the county has any difficulty in paying outside counsel, then it is not the result that we all should want. In other words, the adversary system should be allowed to go forward. Our adversarial system is based on plaintiffs putting forward calls of action, defendants raising defenses, the court making a decision, and the method and mechanism of payment should not be important. Now, that is not to say that we do not acknowledge the fact that play a role in these cases. However, the fee agreement, which we are currently operating, clearly establishes that counties right to control the litigation. And as a result, even a remand subject to a remand to the district court subject to the new fee agreement and the because this is the remedy that the city of Columbus court, the district court in Ohio, ultimately settled upon. And so when the court ordered the fee agreements be revised, they were. And so now what we have is a revised fee agreement. In the face of a complaint where no active fee agreement between the county and counsel was attached, we now have their revised fee agreement. And we know that the revised fee agreement simply puts the county in charge of litigation, specifically identifying the county solicitor or any other county attorney to be in charge of the case. Now, it is well and good for Sherwin-Williams to say that any kind of peak at the current fee agreement is really an attempt to get at the merits on the one hand. However, on the other hand, the county will say Sherwin-Williams will have said that it is the fee agreement that is the injury without having attached an active fee agreement to its complaint. And so I find it difficult to understand how that merits discussion is impossible to take place. And I understand counsel's point and Sherwin-Williams' point that they don't want to engage in a discussion of the merits of the case. Nevertheless, the actual facts on the ground at present are that this fee agreement does exist. It does give the county ultimate control over the litigation. It does permit... Counsel, what difference does that make? I'm not sure I appreciate the fact that a statement in the engagement letter giving this county solicitor control that there's some sort of differentiator between that engagement letter and one that's silent on that issue for purposes of constitutional standing in terms of constitutional violation. Well, I think the answer to your question, Your Honor, is that the challenge to the due process claim is that the county has abdicated its responsibility to have independent counsel by engaging, quote, financially interested counsel on a contingency fee basis. But there are two problems with that argument. One is that although that was alleged, the fee agreement to which they objected was not attached. And separately, they were able to obtain through Freedom of Information Act request the current fee agreement. And so on the one hand, if counsel is financially interested, the way to cure that is to make them financially disinterested by seizing control of the lawsuit, the settlement to the county, not to the lawyers, and thereafter going forward. Otherwise, the county asserts that it's simply impossible to retain counsel on a contingent basis for any purpose. And the Pennsylvania Supreme Court in, and you'll pardon me, Your Honor, I can't recall the exact site right now. But it was a case in which the Commonwealth had sued a drug manufacturer. And in that case, the drug manufacturer was Janssen Pharmaceutical had alleged exactly the identical due process clause challenge in state court. Now, the Supreme Court of Pennsylvania sidestepped the due process issue by finding simply that the defendant in that lawsuit didn't have standing to bring a challenge to the fee at that time in that context. But in a dissent, now Chief Justice Saylor suggested that the elements that are present in the agreement found to J.A. 225 would be sufficient under state law in order to establish the financial disinterest of counsel. And so I don't believe that from either Holmes County, or the later decided City of Columbus case, that any federal court has weighed into the state law issue of fee agreements and held that the mere execution of a fee agreement in a case where the fee agreement has been revised, and where the county or the public entity has yet to file a lawsuit creates sufficient Article III justiciability, or has risen to the level of a case that's right. And because of that, and because of the reason set forth in the district court's opinion, the appellees respectfully request that this court affirm the decisions of the district court on October 14, 2019. Let me, before you finish, let me just ask you one other quick hypothetical. Let's assume the worst. Let's assume that there's no case to be had here, but because of the financial incentives, a lawsuit is brought. And not only a lawsuit is brought, but counsel engages in really aggressive discovery, just sort of the worst case scenario, you know, borderline barratry, where you're, you're trying to bludgeon the defendant into a settlement by even a nuisance value settlement. What's Sherwin-Williams' remedy if that were to transpire? Well, it's that certainly, if a case were to go forward, where it was, I believe, you know, under your hypothetical, Your Honor, questionable, and counsel continue to push and continue to push, then I believe that the Sherwin-Williams' remedy is found in Pennsylvania anyway, in the Pennsylvania wrongful use of process statute in federal court in Rule 11. There are other Pennsylvania statutes which prohibit the type of barratry and sort of bad faith litigation conduct that the court is describing. And I think that is their remedy. They separately could file a lawsuit for wrongful use of civil process under Pennsylvania statute. And if the case warranted could collect such, you know, could be successful, and, and get a but against counsel. All right. Thank you. Any further questions from colleagues? No, not for me. All right. Thank you very much. Thank you. Thank you, Julius. Thank you. Mr. Julius, what's the Fifth Circuit case you're citing? It's Holmes County. Yeah, Holmes County. And is that is that in your briefs at all? Yes, it is, Your Honor. I'll give you the site. I don't have the brief site. Let's see. I'm looking at the briefs. I don't see it. Maybe I'm missing something. I will, if I can ask my colleague to look at the site. I'm looking at, I'm looking at the opening brief. I'm looking at the reply brief, and I am not seeing it. And Mr. Julius, in that case, did the Fifth Circuit have occasion to address constitutional disability? Did it even discuss ripeness? Yes, Your Honor, it discussed. So, so, Your Honor, I'm looking at to answer the first question, Sherwin-Williams Company versus Holmes County, and we cite it on the initial brief on pages 11, 12, 18, and 21. And in the reply brief, we cite it. I have, wait a minute, do I have the wrong, I have Sherwin-Williams v. City of Columbus. Let me look at page 11, maybe just not in the table, the table of contents. Of our opening brief, little four of our table of contents, it's 11, 12, 18, and 21. I see it on pages, I see on pages 11 and 12. I just didn't see it in the table of contents. Okay. And then we also cite it in our reply brief on pages 3, 12, 13, 18, and 19. So, the Holmes County case, that was a case in which the district court found standing and ripeness and dismissed on discretionary factors related to the Declaratory Judgment Act, and it was, it was reversed. The, the, when it went to the Fifth Circuit, the Circuit said this is an actual controversy, and it should not have been dismissed on the discretionary factors that the district court abused its discretion by dismissing the lawsuit. But it discussed the discretion to issue declaratory judgment. I don't recall that it discussed ripeness at all. It, it, it did not, because the court, both the district court, and it wasn't even challenged. The court concluded that it was a ripe, actual controversy. The question was whether the court should proceed with it. And the court recognized that the court, and it looked at factors such as whether it is contingent and the, the concreteness of the controversy. And the court concluded it was concrete because there had been media reports about these lawsuits that were going to be filed. Really legal issue that the court should address is the federal constitutional rights. And so, it reversed and remanded for that case to proceed. And what I heard from counsel's argument was a lot on the merits, which is exactly what we suggest we should be able to present, whether or not this fee agreement, whether or not this arrangement is sufficient, whether or not our First Amendment rights will be violated. And I heard a lot about the contingent fee agreement not being attached. If you look at JA-284, that is the minutes from the county council record. This is what we had at the time of the, of the filing of the lawsuit. And it was a JA-288 lead paste paint litigation. And media reports specifically mentioned Sherwin-Williams Company as a target of that lawsuit. So, what we've alleged is that the contingent fee agreement, and whether it was the first agreement or the later agreement, that contingent fee basis, that financial interest, violates the U.S. Constitution. But the principle announced in Berger that you must do justice and the appearance of justice in public interest lawsuits, that is incompatible with a contingent fee agreement. And whether or not... Let me go back to, and I'm just, see how this played, or maybe you can tell me how it played out in connection with the cigarette cases, the suits that were brought. Council did have contingent fee arrangements there, and you're saying that that was somehow unconstitutional? I, I don't, I don't believe it was challenged in that instance. I believe... What about the opioid cases? Is that, has that been challenged there? Public nuisance, a public nuisance challenge by the government, quasi-criminal matter, on a contingent fee basis would be unconstitutional. I do not know the... I guess the Northern District of Ohio wasn't, where they ultimately settled, is that right? They're litigating in a federal MDL there, Your Honor. I do not know the particulars of the fee agreements. I don't know how that, how that works. But, but our contention, there is no argument that access to the courts here is somehow denied. And if there is, that's something that should be discovered, that should be discovery points, whether or not there's an exception because of financial harm. But this court, you know, for example, experts, experts cannot be paid on a contingent fee basis. You can't pay an expert if you win the case, and not if you don't, because the courts have recognized that the improper financial interest may taint the testimony. It's the same principle. You can't bring, you can't have a prosecutor that only gets paid if somebody goes to jail. And what we're contending in the public nuisance lawsuit, particularly where fundamental rights are at stake, where you're talking about imposing liability on past speech and association, that it's not about doing justice, but it's about the highest recovery. Let me go back to the, again, I'm just trying to think of the consequences of what you're suggesting here. Let's say in either a cigarette case or an opioid case, that there was, the council had contingent fee arrangements. Would those suits, which among other things would include nuisance, I would assume, violate the constitutional rights of the cigarette manufacturers or the opioid manufacturers? Again, you're, I'm not, I'm not familiar with those, with those arguments. But I'm, no, I'm just trying to play this out. How would, what would you tell us there? I'm talking about the consequences here. What are the ramifications of going your way? Well, the ramifications of going our way on standing a rightness is this, that we get to proceed to the merits and have this discussion in the context of discovery in a fully formed record. That's the immediate consequences we're talking about. And I think it would help. But you would think, you would think that somebody would have come up with the argument that you're making in those cases, which are much higher profile than the Sherwin-Williams case. Those, I'm not aware of those, those arguments may have been made, Your Honor. And the cigarette companies all settled. And I think that's part of what we're talking about here. I don't know if, if these arguments were made. I don't know the theories that were brought under those. I'm not familiar with that litigation. But it's exactly the type of reason why we need to have a federal lawsuit is because when, even if there were an unconstitutional engagement in those cases, and they eventually led to a settlement, the issue that we're bringing up, whether or not this was permissible in the first instance, never gets to appellate review. It never gets a decision issued because the consequences are too high and companies have settled out. And what we're asking for is the opportunity to bring forward on the merits, whether or not this is an acceptable manner to give the police power of the state, the public nuisance is brought under the police power, to put that out for a contingent fee. But you have the ability to do that, to make that argument if and when you're sued. We could make that argument as a defense, Your Honor. You will make that argument. I presume we would make that argument, Your Honor. Ex parte Young recognizes that a defense, when there's a constitutional violation, you can bring an affirmative claim. In ex parte Young, the plaintiffs could have stood back and said, these rates that you're alleging on the railroads, these imposing, they're unlawful. You can't do this, and therefore, I win my lawsuit. But doesn't the county here control or maintain its police power, as it were, with language in the fee agreement that makes it clear that they have veto power over any But, Your Honor, you're asking whether the merits, whether they win on the merits, whether they have control, which is sufficient to win in due process. I would argue we've not had any discovery. We've not had litigation over... No, but this agreement's part of the record, and it makes it clear the county has veto authority over any decision in the court. We would disagree. The basis that having a contingent fee counsel violates the Constitution. That is our argument, and that's what we're asking to be heard on. But even when the county, at the end of the day, has veto power over any decision, that contingency agreement violates the Constitution. That's your position. Yes, Your Honor, and I think the instance of what we're dealing with here is instructive, because we're not dealing with a case in which the county decided it was going to file lead paint litigation on its own, went out to hire counsel, and then proceeded. So in this instance, counsel brought forth the claim, and it said, hey, I have a lawsuit for you to bring. But that's exactly what happened in the cigarette cases. Counsel went out trying to find clients at the state level in connection with the... Or state, county, whatever, government level, in connection with possible suits, right? Again, Your Honor, I don't know, and that's something that would be fleshed out at the merits. The point being here is that counsel identified, they investigated the claim, they identified the defendants, and they brought them forward and said, sign on to this lawsuit. So it's the investigation, it's the prosecution of a claim, not against people who own the homes in which children are being lead poisoned, but against the companies that have deep pockets, that haven't been involved in this industry in more than 40 years, and seeking to impose liability based on First Amendment rights. Speech that goes back decades, sometimes a century. That's... And I would argue, even if it occurred in the cigarette cases, that doesn't make it right, where you have a lawsuit created not to do justice, and to use the police power to do it. And we are entitled to have our day in court, to have that determination made. And that's what we're asking, is to go back to the district court, and ultimately, it may come back up to this court, and this court can say, we told you, Mr. DeGiulio, we were pretty skeptical of this, we haven't changed, you don't win. But we should have the right to make that case, to build a record, and to argue that this violates the federal constitution. All right. Thank you very much. Thank you to both counsel for being with us today. We'll take the matter under advisement. I would ask counsel if you would have a transcript, a pair to this oral argument, and to split the cost if you would. Again, thank you for being with us via audio. Sorry, it's not in person, but maybe someday, post-vaccine or whatever. In any event, appreciate it, and we'll take the matter under advisement. Thank you.